And our first case today is Wayman Tom v. Hospitality Ventures, and we'll hear from Ms. Hernandez. Good afternoon, and may it please the Court, Jill Hernandez on behalf of Appellant Wayman Tom, and please let me know if I'm speaking too loudly. I will be reserving six minutes for rebuttal. Your Honors, coincidentally, yesterday was about celebrating workers' rights in this country. And this case is about protecting some of those rights. At its core, this is a tip credit case where the appellees operated an illegal tip-pulling arrangement permitting non-tipped employees to participate, thereby violating FLSA's wage requirements. When confronted with this lawsuit, the appellees promptly forged a narrative to evade the requirements of the FLSA by retroactively reclassifying certain gratuities as service charges and applying Section 207I of the FLSA. To oppose such a scheme and accepting appellees, artificial justification would undercut one of the fundamental purposes of the FLSA, ensuring that workers are adequately paid as required by the FLSA. As such, this case... Ms. Hernandez? Yes. If I could interrupt you just for a second. You just mentioned the classification designation as a service charge. And there's discussion in the briefs and discussion in the order about the 7I exemption. And my first question is whether, in your view, a service charge under 29 CFR 531.55 is the same concept as a commission under 7I, or are those different concepts? Are they used interchangeably, or are they different? That is an excellent question, Your Honor. And for purposes of this matter, they are different. Here the auto gratuities are distinguishable from service charges, as they were not compulsory, inflexible, and non-negotiable as required by the applicable regulation 531.55. And for example, in the McFeely case versus Jackson Entertainment, this court provided some initial guidance identifying at least two prerequisites that indicate a payment may be a service charge. The company must include the service charges in its gross receipts, and that such service charges must be distributed to its employees. Now in McFeely, because the employer failed the first prerequisite, no further assessment of whether the service charge was, in fact, a bona fide fee or a tip was necessary. Counsel, in this case, those prerequisites mentioned in McFeely have been met, is that correct? Actually, Your Honor, they have not been met. While the appellees failed to include a statement of undisputed fact regarding the service charge or proof that service charges were included in the gross receipt, even if those auto gratuities at issue in this case were included in the gross receipt, there are still additional factors that should be considered in determining the compulsory nature. That's not my question. My question is, you have these two prerequisites in McFeely. Whether or not there are others, that's part of what we'll discuss today. My question to you is, are these two prerequisites met here? Your Honor, the answer to that question, respectfully, is no, because the appellants did not include a statement of undisputed fact relating to whether or not the service charges were actually included in the gross receipt. So while the appellant did not necessarily oppose the statement of fact because nothing existed as it relates to the service charges, it wasn't also conceded. It has been argued in response in the appellate brief, and so we would contend that the first prerequisite was not met in this matter. Cezie, I understand what you've said now. Is there anywhere in your briefs that you note that these two prerequisites were not met? We do address in some aspects that there was no indication, no statement of undisputed fact included. Unfortunately, right at this moment, I'm looking for that information, and Your Honor, as soon as I am able to retrieve it, I can communicate that to the court. Why don't you look for it and you can tell us on rebuttal so you can proceed with the rest of your argument. Thank you very much, Your Honor. I greatly appreciate that. And before you do, Ms. Hernandez, I'd like to just follow up a little bit on my earlier question. So it does not look like the service charge regulation has the requirement that the service charges have to be 50 percent or more of the worker's compensation. That is in the 701I exemption. And that's my question as to if this, I get your, if we assume that this is a service charge and it meets the two McFeely requirements, do we even need to be talking about 701I? Well, for purposes of this matter, Your Honor, the appellees contend that because the service charges basically constitute commissions, that 701I does apply. But because of the authority that around the country, and there is quite a bit of authority around the country that has analyzed the context of service charges and determining whether there is a discretionary nature, has found that any indicia of evidence that would demonstrate that the service charges are discretionary would be grounds to deny a motion for summary judgment. Sure. Sure. I understand your argument about there being a genuine issue of material fact. I've read that and I appreciate the cases you've cited. And I recognize that the employer has focused a lot on 701I, as did the district court. I'm simply asking, why are we doing that? I mean, a service charge seems, as I read it, to be a requirement that does not have some of the limitations. And if you assume, and I know you don't agree with this, that there is no genuine issue of material fact about discretion, why does that not end the inquiry? Well, Your Honor, it certainly doesn't end the inquiry because it would essentially negate the application of the 203M. And here, all of the evidence supports that the employer actually had, or essentially was utilizing the TIP credits, not 701I. And yet, to circumvent the requirements of 203M, the TIP credit, it created or essentially reclassified these auto gratuities, which are nothing more than TIPs, to call them service charges, and therefore, to bring in 701I, so then 701I would apply as an overtime exemption, negating the minimum wage and negating the overtime. I hope that answers the question. Yeah, let me follow up on that, and I'm sorry to be kind of stuck on this, but I'm just actually trying to understand it. I mean, is there a long, you know, prior to a lawsuit or prior to a complaint, is there something where the employer designated the way they meet the FLSA as being either a TIP credit or a service charge? Is that something that you must do as you go along? And are you saying they changed it after the fact? Or is it something that if you're challenged, you can meet it under any of the available ways? Your Honor, that is an excellent question. And to answer your question, I would direct the Court to Section 203M of the FLSA, which the appellees here, now Section 203M directly relates to the TIP credit. The appellees advised the servers in writing, as required by 203M, that they were going to be paid $213 an hour plus TIPs, not plus commissions. The onboarding paperwork explicitly excluded commissions as a form of income, thereby demonstrating that their wages would be earned through a direct hourly wage of $213 an hour, time and a half for hours over 40, as high as $588 per hour. And the FLSA states that the employees' TIPs are their property. So the servers in this case were paid time and a half, $213 an hour, and as high as $588. So I hope that that addresses the Court's question that yes, pursuant to 203M, the appellees did comply with instructing and advising the employees through a handbook and in writing and onboarding paperwork that they were TIP employees subject to 203M and that they would be paid $213 plus TIPs. Counsel, if I could... I'm sorry, Judge Calabon, go ahead. No, go ahead, Judge Clay. You go ahead. I guess my question, Counsel, is that information conveyed by the employer to employees dispositive? Or can an employer, whether they intend to or not, back into FLSA compliance even if they provided inaccurates or arguably misleading information at the front end? So this information is obviously dispositive. It's in the record. In fact, the other interesting point, Your Honor, is that during the course of deposing the appellee's corporate designee who testified under oath that he was responsible for implementing the appellee's payroll practices and policies, he testified that he had never even heard of 7i until one week before his deposition in preparation for the deposition, which I think is dispositive that the appellees actually just try to recreate a narrative to circumvent the requirements of 203M by applying and reclassifying certain TIPs as service charges and then deny to be considered overtime exempts. But is there anything, Counsel, in the regulations that requires the employer to pick their lane, so to speak, for FLSA compliance and stick with that no matter what? Or does the employer have the ability to meet the minimum wage and overtime requirements whichever way the facts take them? That's an excellent question, Your Honor, and I must say that unfortunately, as I mentioned at the outset, to allow an employer to simply, to allow that scheme where the employer can simply change the pay practice even though throughout the course of the appellant's they were communicated to be TIP employees and subject to 203M and pay 213 plus TIP would obviously allow all of these employers to evade the requirements of the law if they simply were going to pick and choose when confronted with a lawsuit of another way to comply with the law. Look, if I could just follow up on that last one, please, Judge Agee. Counsel, how is it evading the law if, I get it, it's going in a different direction from TIP, from including TIPs, but the law, I thought, was designed to make sure that they get the minimum wage, number one, and number two, get time and a half if they work over 40 hours. If they're getting that by virtue of including service charges, how are they evading the law? It seems to me they are giving the employees what the statute is designed to give them. Well, again, Your Honor, because at the outset they were not advised that they would be paid commissions or that somehow commissions would be a form of income, including the suggestion that somehow once they adopt the gratuities as service charges, it completely negates the requirements of 203M. I think that would be a huge disservice to millions of employees in the restaurant industry because now you would have employers that on the surface would appear to adopt a TIP credit, paying these people less than minimum wage, paying them time and a half, $213 an hour, and then when confronted with the lawsuit, completely switch gears and do a $180 and then adopt a completely different set of parameters or exemption under the FLSA to appear to be in compliance.  You're welcome, Your Honor. Counsel, and you've got some time reserved for rebuttal. Mr. Hunt, we'll hear from you. Thank you, Your Honor. To follow up on one of the questions that the court asked, this is a case, obviously, in the Fair Labor Standards Act, and compliance under the act can vary from pay period to pay period. It can go in and out. There's nothing that prohibits an employer from using the 7i exemption or using a TIP credit, and in this situation, what happened was, as the district court found, the employer properly used the 7i exemption. To further follow up, the two requirements in McFeely were clearly met here. There's evidence in the record. It's in Mr. Remy's declaration. It's at volume 6, page 2221, where he describes that the service charges went into the grocery seeds of the defendant, and in addition to that, they paid the North Carolina sales and use tax on the service charges. So these service charges, these commissions were completely treated in a proper fashion pursuant to 7i. Counsel, if I could, I want to go back to the question I was asking your colleague. I mean, you're referring to 7i, and I understand that argument. I may have a question or two about that. But is the service charge under 531.55 necessarily the same as 7i? Why aren't you arguing this is a service charge without regard to a commission under 7i? Well, I think, Your Honor, I think the two are the, in our opinion, I think the two are the same. The regulation speaks to the service charge under 7i. So you think 7, I'm sorry, you think the regulation is interpreting 7i so that those are essentially one and the same? I believe that it does. It talks about what the service charges are. I don't think there's a difference between the two. Well, okay. 7i has two things. Let me follow up on that then. I mean, 7i appears by its text, if I'm not reading it incorrectly, to apply to the overtime requirements. It doesn't say anything about the non-overtime minimum wage. And so that's why, and it also has the requirement of the 50 percent of compensation element. And I know you think you established that, and you may be right, but is there anything authority-wise that says service charge under 531.51 is the same as a commission under 7i? Or is that just y'all's interpretation? Well, I think that that, to an extent, has been the way the courts have interpreted it. For example, the MECMET decision, which came out of the Seventh Circuit a number of years ago, that, I think, basically equated the service charge to the commission. And even before that, actually, and I think we cited this in our brief going back to 1976, there was an opinion from the Wage and Hour Administrator regarding the use of service charges in the hospitality industry. And basically reached the same conclusion that they did in MECMET. So I think that there's been a pretty consistent equivalence between the service charge and the commission was the service charge in the hospitality industry and a commission under 7i. And so I think the courts and the Department of Labor have both viewed it that way. And in the hospitality industry today, that's probably the most common way of compensating employees that work, for example, in the banquet department of a hotel. Or, as was the case here, with a restaurant that specializes in large groups or business groups. That's what sort of made the facts in this situation somewhat unique in that basically had a large number of businesses, large number of business activity, large number of groups. In fact, the restaurant wasn't even open on the weekends except for dinner on Saturday night. They derived most of their business from groups that came in during the week. That's why, if I could, I apologize for interrupting your train of thought. But if the focus is going to be on section 7i, how, if you look at section 779, 415, talking about the compensation where we're having to assess this 50% requirement, how are tips not part of all compensation paid to or on behalf of the employee's remuneration for his employment during the period? Oh, because, well, first of all, the tips are property of the employee and not property of the employer. Are they here because the appellee used a tip pool? They did use a tip pool to distribute the service charges and the tips. But with respect to why you don't count the discretionary tips, those tips are only counted if you're using a tip credit. And here, as the district court found, there was no need for the employer to use a tip credit because if you add the amount of the service charges plus the cash wage that the employees received, it always came out to be, or for the most part came out to be, more than time and a half the minimum wage. And it was also... Even if you don't count the tips, the traditional tips. You're correct for the discretionary tips. There's no dispute that if the tips are included in the total compensation, then the service charges don't hit that 50% threshold. Is that right? I think in that case, you'd have to go back. We'd have to go back on a week-to-week basis. There may be some where that actually might have happened. Our position is you don't include the tips, as the district court found. And we also submitted an affidavit from a former wage and hour examiner to the effect that the tips don't go into that calculation. The employer does not use the tips and they are the employee's property. But there's no specific regulation or specific ruling from the wage and hour division that resolves that particular question? Well, Your Honor, I think that there's, with respect to the proper characterization of any tips received in excess of the tip credit are not included in the employee's regular rate because such tips are not payments made by the employer to the employee as remuneration for employment within the meaning of the act. The tip credit simply is an offset to the minimum wage. So in any event, those tips are not included for purposes of that calculation. But counsel, on that language from 53160, it says you're right. Any tips received in excess of the credit need not be included in the regular rate. But the 207I, you know, when you're talking about the 50 percent, it's talking about compensation, not regular rate. So are you using a regulation that's talking about what the rate, hourly rate, is and applying that to the concept of compensation? Yes, because I believe that the regulation regarding the regular rate discusses the employee's remuneration and therefore that's basically fundamentally equivalent to compensation. So in this case, the compensation is not paid by the employer. Those tips come from the guests. The guests can leave whatever they want. Now, again, if it's a large group, which was the situation in most cases here, then it was subject to the 20 percent service charge. That's a commission and the employer properly relied on the 7I exemption. But counsel, if I could, I'm glad you mentioned 53160 because it was next on my list. I think you're exactly correct. I mean, the language of that regulation is clear. The amount of tips in excess are counted toward the regular rate of pay, but the preceding sentence clearly indicates that tips are counted up to the minimum wage. That was a very poorly worded question. Let me try it again. The regular rate of pay includes tips to the extent those tips are needed to get you from your hourly rate to the federally mandated minimum wage. And I think Judge Caldebaum's point is an excellent one. It seems that we're begging and borrowing from Braggs talking about regular rate and we use it. There's a different word that's used over in 779-415. We're talking about compensation as opposed to regular rate. But I think the distinction here, Your Honor, would be that in this situation, the restaurant didn't need to use the tip credit. In other words, using 7I and there's a regulation that says that an employee can be paid totally out of service charges if they meet those requirements. So here, it wasn't necessary for the restaurant to delve into the tip credit and situation or what that happened to be or what the difference between the two was because the amount of the commissions that the employees received plus the direct cash wage that the restaurant paid satisfied the requirements of Section 7I. Doesn't the hourly rate that's paid, the 213 an hour, doesn't that contemplate they're going to take a tip credit? In other words, can an employer pay a low hourly rate as low as 213 an hour and not take advantage of the tip credit? In other words, they can use the 213 rate, which contemplates tipped employees and tipped credits, not use that, skip over tips, and use service charges instead. I mean, can an employer meld those two concepts, leaving tips out of the picture? I think under the correct circumstances, they can because, as in this situation, because you had so much group business and the commissions were so high and the service charges were so high that, yeah, you could pay a direct wage of 213 or 250 or whatever they chose, but so long as the commissions were high enough to come in at time and a half the minimum wage, which the plaintiffs readily admit they were paid more than time and a half the minimum wage throughout their employment, but so long as those factors pertain, then I think an employer could. I think in a lot of cases, for example, if you had perhaps a restaurant that maybe didn't charge as much, had less group business, the ability to use the service charge is going to be very limited. I mean, they're just not going to have the big ticket items, as they said in some of the other decisions that you had in this situation, that you had it on. I think that's the distinction between those two scenarios. Counsel, your opposing counsel has argued that what we see now on appeal and presented in the district court with the use of service charges, the auto gratuities, is not what was originally placed on the employer's books when the employees started. What's your response to her argument there? Well, first of all, Your Honor, as I said, we submitted evidence that the service charges were booked properly and the employer paid the taxes. The fact that the employees may have been told that there was a tip credit or that they were getting $213 in a direct cash wage, we think is irrelevant because wage and hour laws really depends on what actually happened. What actually happened in this case, the actual circumstances on a pay period basis were that the amount of the service charges were sufficient to comply with 7i. Part of that was the time and a half requirement the plaintiffs admitted. The plaintiffs, therefore, were paid the minimum wage. They were paid more than time and a half, and most of that came from the service charges. Well, your opposing counsel hasn't breached this part of the argument from brief yet, but I assume she will, and I wanted to give you a chance to respond. The argument is made that there is a material issue of fact because the service charges were not compulsory or controlled by the employer, but that they were discretionary and that there's evidence in the record that on various occasions when there were complaints, the service charge would be removed. What's your response to why that isn't a material issue of fact that would preclude summary judgment? Well, first of all, with respect to opposing counsel, I don't think there is evidence in plaintiff Tom, who's the principal plaintiff here, testified that there were no complaints at any time by any customers about the service charge. That was in his deposition testimony. What happened on a handful of occasions, according to the record, was that the individual servers, or at least two of them here, maybe Mr. Kelly and Tom, asked to have the service charge, would ask the manager to remove the service charge. The reason for that was because they felt they could get a bigger tip from the party, rather than the straight application of the 20%. That's why that was the only circumstances when it was removed, but it wasn't pursuant to a customer complaint. I think this situation is very distinguishable from some of the cases that counsel cited in a brief, where right on the invoice, or right on the guest statement, the restaurant would say, this is a suggested gratuity, or if you have a problem with this, you ask your server, they can remove it. You can, if you don't want to pay it, basically you don't have to. That wasn't the case at all. This was a flat directive. This was a straight 20% service charge on parties of six on the market. Yes, there were maybe a handful of occasions where one of the servers asked to have it taken off, but it wasn't one of the customers. For that reason, Ron, I don't think that that rises to the level of a disputed material fact. So in those instances where the auto gratuity was removed, and a traditional tip was given, was the tip counted as part of the auto gratuities and included in the employer's gross income, or was it counted purely as a tip and attributed to the employee? In those situations, it would have been counted as a tip and attributed to the employees because there would have been no service charge, and there wouldn't have been any revenue to book on. So that would have been treated as a tip. But again, this was a handful of situations. The appellants have argued that they're... Secondly, the appellants have argued that a tip credit, or excuse me, the service charge has to be flexible. It has to be this fee that's always imposed. The cases really don't stand for that. What they really stand for, and first, I don't think there's any case that says that service charge has to be flexible. What they actually stand for is that if you have a system where the service charge is suggested, or it's recommended, or the practice is such that any time a guest complains, it can be removed, then in effect, it really is operating as a tip, and therefore, it ought to be treated as one. But that's not the situation here. That simply isn't what happened. As I said before, there's no evidence in the record about any guest ever complaining about the service charge, or the restaurant ever removing the service charge in response to the complaint. Counsel, anything else you want to tell us before your time runs out? Yes, Your Honor. I think with respect to the duties with regard to the ... and the appellant spent a fair amount of time on this, in brief, with respect to the sushi chefs and the work of the gentleman at Expeditor. I think it's pretty clear that both of those, the Expeditor and the sushi chefs, both were directly involved in the stream of service at the restaurant. With respect to the sushi chefs in particular, there's abundant evidence that they interacted with guests, they greeted customers. There's a Department of Labor opinion letter that talks about how sushi chefs can be included in the tip pool. People would converse with them. Here we're not ... this isn't an issue about the sushi chef. It's about the helper. There isn't an issue here about the sushi chefs that I recollect. Well, I think that ... About their helpers. I think the terms have been used somewhat interchangeably in the record. I think that you've got the helpers and the sushi chefs. There was only one chief sushi chef, and he was a salaried employee, didn't participate in the tip pool. I think the testimony regarding the other individuals, whether they were sushi chefs or sushi chef helpers ... Can I continue, Your Honor? Yeah, please go ahead. Finish up that thought. Whether they were sushi chefs or sushi chef helpers, I think the evidence is that they interacted with guests. People would come to the sushi chef bar. They would talk to them. People would ask them questions about what they were doing. It was a real back and forth between the two. Therefore, I think under any analysis, they were properly included in the tip pool. All right. Thank you very much. Judge Quattlebaum, Judge Kling, do either of you have any further questions for Mr. Hunt? I do actually have one, Judge, if I could- Please go right ahead, Judge Kling. ... take a deficit on time, and I apologize. Counsel, on the issue of the tip pool, if there is someone who participates in the tip pool that shouldn't, does that collapse this entire payroll practice? I don't believe so, Your Honor. I think it would depend on the extent to which they participate in the tip pool. The other aspect, too, would be you have to look at the person's activities on a week-to-week basis, or pay period-to-pay period basis, because all exemptions to minimum wage and overtime are done on a payroll-to-payroll period basis. Perhaps if there were certain times when the person shouldn't have been in the pool, that might collapse the tip pool. But in this situation, I think the evidence is pretty clear that these folks were properly Thank you very much. That's completed. Judge Quattlebaum, did you have another question? Just one last one. I apologize, too. The district court talks about how the 701I, or service charge, or whatever we call it, satisfies the FLSA obligations for most weeks, and that for the others, the tip exemption, or the tip pool credit, satisfies those obligations. I'm not sure if this is in the record or not, and I'll ask your colleague as well, but is the reason that the service charge commission did not satisfy the obligations for several weeks, is that due to the hourly rate being too low? Or is that due to the commissions not being more than 50 percent of the compensation? It was due to there were a handful of weeks where the amount of commissions didn't satisfy 50 percent as well. And so if, and it doesn't sound like you agree with me on this, and you may be right, but if the service charge is a separate category from 701I, and doesn't have the 50 percent of compensation limitation, would the service charge meet the FLSA obligation without consideration of the tip pool? I think it would. I believe it would, Your Honor. I mean, I'm not sure I'm understanding the... In other words, if the, I mean, the employees would still be paid the service charge, but in this case, the number, the amount of service charges they received didn't rise, didn't satisfy the 50 percent component of 701I, so that's... Yeah, it might not have been 50 percent, but it satisfied the wage requirements, both regular and overtime, correct? Right, it would still, it's still, right, it would still be considered in that, right. Okay, I appreciate it. Thank you, Judge Agee. All right, thank you. Thank you, Mr. Hunt. Ms. Hernandez, you've got time left on rebuttal. Thank you very much, Your Honor. There are just a few points that I would like to make. The first is that this court has found that with respect to employers that try to create or follow other sections of the FLSA, such sort of a position just cannot be taken, and I'm referring to USDOL versus fire safety. In that case, this court found that employers may not retroactively apply other sections of the FLSA to reach compliance, so that would be my first point. With respect to the 701I and these service charges, which appellees would like to insist are commissioned for purposes of 701I, the applicable regulation that is at issue and instructed is 29 CFR 779.4158, which states that in determining for purposes of 701I, whether more than half of an employee's compensation represents commissions on good and services, you must total the entire compensation during the employment of the individual, all compensation in whatever form or method, and the only compensation that would be excluded is any compensation that has nothing to do with employment. So on this basis alone, those regular gratuities, the direct wages of 213, the overtime, when comparing against the autogratuities, which obviously appellees are contending are service charges, exceed 50% of the employee's total compensation. In other words, the autogratuities always are less than 50% of the total compensation. So that's my second point. My third point is... Counsel, do you have a case that supports the argument that you just made? Unfortunately, with respect to the calculation of 779.415, there is not that much authority, but certainly the regulation itself was obviously intended as an interpretive regulation to instruct employers on how to utilize and calculate the compensation for purposes of utilizing 207I, the FLSA's overtime exemption. Now, going back to the service charges, there is plethora of authority all around the country that where the service charges have a discretionary nature, have any indicia of discretionary nature versus the compulsory fee that is inflexible and non-negotiable, then the motion for summary judgment must be denied. And while I heard my colleague, Mr. Hunt, suggest that there were no facts in the record to suggest that these autogratuities were discretionary, that is simply false because the factors include what is the customer's understanding of the payment. And here, the customer could easily ask to have it removed if they were not happy with the service. In fact, if you look at the court's ruling or opinion, you can see that the district court actually analyzed a sampling of the appellee's customer bill, which shows 20% gratuity. And then it had a separate line below it saying plus additional tip with a line there so that the customer could add more to the gratuity and then a total. By just the plain language, you could see that for the customer, that would demonstrate that it was a gratuity that was discretionary and not a compulsory service charge. Well, I can understand why the separate line for additional gratuity would be considered that, but I don't understand the reasoning that says the prior line showing the service charge or autogratuity, whatever you want to call it, how it would affect that. Well, because one of the factors is what was the customer's understanding of the payment. And it's one thing if the bill for going to a restaurant and having a party of six or more having a service charge and it says on the bill that it is a service charge with a percentage. But in this case, it specifically said gratuity 20%. And so if you just look at the plain language and definition of gratuity, it is a tip. And so for the customer, that would imply that the appellees were simply, for ease of reference, recommending a percentage of the tip. Now, additionally, the appellees... Counsel, we're going to give you a couple of extra minutes since we gave Mr. Hunt a couple of extra minutes. So we may have a few more questions for you. In this case, or I guess any case of this genre, if you have... Just make a hypothetical example. Say you have 100 functions at a restaurant and they put this service charge autogratuity on the bill for 100 of them. But in one instance, the server comes in and says, I think they're going to tip me 30%. Will you take it off? And management agrees to take it off. Does that doom the service charge to failure in that one example? Your Honor, that is an excellent question. And the answer is unequivocally yes. And you can see from the plethora of authority around the country that that was the reason why the district court would absolutely deny a motion for summary judgment. Because even in those cases where it just appeared to be a service charge and not some type of gratuity, in this case an autogratuity, the courts had found that it was merely the minimum. But if they were able to pay more or not pay it at all, then that in and of itself would demonstrate the discretionary nature. And that is what happened here. In that example, if this one case out of 100, the food was terrible, the waiters were drunk, they spilled food on the customers, and management takes the service charge off. In that circumstance, you say that one event in and of itself dooms the service charge to be an unregulated tip? Well, I hear what Your Honor is saying, and my understanding is that you're suggesting that if it only happens once, then obviously it somehow would not negate the service charge compulsory nature. Well, what we're trying to establish here is the principle of law. So that's why I'm trying to understand the argument on what creates a material fact that's in dispute on the treatment of the service charges slash autogratuities. And I took the argument from your brief to be that it could never, under any circumstance, be a deviation from treating the service charge as mandatory no matter what the circumstances. That is correct, Your Honor. That is absolutely correct. Because the service charge regulation states that it must be compulsory, it must be inflexible, and it must be non-negotiable. So not even in one situation where the servers are drunk and the service is terrible, can the manager remove the autogratuity and still be able to assert that the service charge is compulsory? And in this case, the facts demonstrate that it was only applied 50% of the time, and it was perceived as a service property because they could ask to have it immediately removed, and the customers could pay more, could pay less, or pay nothing at all. Additionally, the regular tips and the autogratuities were commingled all of the time. Because if there were parties of six or more, and it had the autogratuity, and if they added another $100 because the service was impeccable, then it would be commingled, and then it would be added, and all of the servers would essentially split the gratuities through their payroll check stubs, and then it would be taxed as wages. All right. Ms. Hernandez, do you want to try to wrap up in the next minute or so? Yes, Your Honor. Thank you so much. So finally, after the last issue here, the district court clearly and improperly weighed conflicting evidence regarding the non-tipped employees' duties who participated in the tip pool. There were genuine issues of material facts relating to the kitchen supervisor who also functioned as an expediter, and the sushi chef helpers. The facts demonstrate that they simply did not engage in more than de minimis interaction with the customers to qualify as tipped employees. And if they did not qualify as tipped employees, then it automatically blows up the tip credit, and therefore the employers are on the hook for the difference between $213 and $725 an hour, and the overtime at $725 to $1088, and then they would also be entitled to their tips, which they illegally had to give up to the $10 tip pool. Judge Quattlebaum has a question. Yes, Your Honor. Counsel, in looking at this issue about whether there's a genuine issue of material fact, I appreciate your concern with the district court's language in the first part of the paragraphs making the decision. I mean, there does, in all candor, seem to be some level of, you know, crediting certain types of testimony over others. So, but the second part, I think, is the issue of whether we have an actual dispute is based on whether it's more than de minimis or not. And just from looking at this, it looks to me like your argument is much stronger on PAPAS than it is with the assistant sushi chefs. And my question is whether or not you agree with that or not, and your colleague may disagree with both of it, but if one employee, if there's a genuine issue of material fact over PAPAS and there's not over the sushi chef helpers, does that a material issue of material fact for the tip pool as a whole? Yes, Your Honor. Absolutely. Even if there's one individual who's not a qualified, a tipped employee, just one, it would blow up the tip credit. Absolutely. It would invalidate the tip pooling arrangement and subject the employer to a violation of the FLSA. And here, the sushi chef helpers were no different than salad preparers. And there is extensive authority from the Fifth Circuit and from various other circuits where even the expo's and sushi chef helpers were found to be non-qualifying tipped employees. So we have that authority that is particularly instructive. But here, even Apelli somehow tried to suggest that just because the sushi helpers called themselves sushi chefs, that somehow they had the same duties and engaged in customer interaction. And that position is simply disingenuous. All right, Judge Quattlebaum, Judge Klee, do you have any further questions? Yes. Thank you very much, Ms. Hernandez, and we thank both counsel. Obviously, these are unusual times for all of us because at this point, we would be coming down to greet counsel, which you'll just have to consider this your virtual greeting and we'll see you in Richmond when we're allowed to return. So with that, we'll take a short recess while we move on to our next case. Thank you very much, Your Honor.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Thomas S. Kleeh